ELIZABETH R. GALLIVAN, Admx. *vs.* THOMAS E. O'DONNELL *et al.*

APRIL 4, 1934.

PRESENT: Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This bill was brought for the purpose of securing an accounting of the partnership of Gallivan & O'Donnell. After hearing upon bill, answer, issues of fact and proof, a rescript was filed and a final decree entered in accordance therewith. The cause is before this court upon complainant's appeal from this decree.

James Gallivan, Jr. and Thomas O'Donnell commenced business under the name of Gallivan & O'Donnell as equal partners by articles of copartnership dated March 10, 1894. The business was continued until March 31, 1919. During these years the firm developed a large fire, accident and liability insurance business. April 1, 1919, John F. O'Donnell, son of one of the partners, was admitted to the firm and new articles of copartnership were executed. The new firm continued business under the old firm name without any interruption and succeeded to all its assets, including accounts receivable and the use of its books and records. This new partnership continued until September 30, 1920, when it was dissolved as the result of a written notice given by the O'Donnells to Mr. Gallivan June 28, 1920. After the dissolution of the partnership the respondents O'Donnell acted as liquidating agents and had control and custody of the partnership assets and books. Mr. Gallivan continued in the insurance business with members of his family under the name of Gallivan & Co. until his death, February 17, 1922. His widow was then appointed administratrix of his estate.

In the notice to Mr. Gallivan of the dissolution of the partnership the O'Donnells wrote that he had objected to an immediate audit of the books and that, although he had received $8,000 out of the earnings of the firm during the preceding fifteen months he had not attended to some matters of the firm which he had promised to attend to nor mentioned an audit and that they had engaged a local firm of accountants to proceed at once and make an audit for the firm. The audit of the books from January 1, 1917, to June 30, 1920, was completed by September 9 and a copy of

it was sent to Mr. Gallivan. A second audit for the remaining three months of the partnership, ending September 30, 1920, and for its liquidation ending August 31, 1922, was made and on September 23 a copy of it was sent to the complainant. She rejected this audit as incorrect and about six months afterwards filed this bill for an accounting.

Respondents introduced in evidence these two audits. A representative of the accountants testified that the audits showed the true condition of the books of the partnership. Complainant's local accountant testified that he had examined and tested some of the firm's books and accounts and was satisfied the original audit was substantially correct.

At the close of the evidence the validity of only a few of the items appearing in the partnership books and audits was challenged by complainant. The trial justice considered these items and made them the subject of special findings in his rescript. Complainant now contends that the court erred in allowing the following items:

SALARY. The court allowed $9,600 which had been paid to Thomas E. O'Donnell at the rate of $100 per week up to the time of the dissolution of the old partnership—March 30, 1919—and which was entered upon the books as an expense. Complainant contends that this allowance was contrary to the partnership agreement of March, 1894, which provided that the two partners should share equally in the profits and assets and that each partner was entitled to draw from the profits not exceeding $25 per week. It is agreed that the withdrawals from the profits by the two partners were equal in amount up to the time of the dissolution of the partnership. Mr. O'Donnell testified that the reason he withdrew the amount charged as expense was because extra work had been imposed upon him in carrying on the business on account of the illness of Mr. Gallivan—who did not take an active part in the business after June, 1917—and because of the absence of three experienced clerks from the office. He also testified that in April, 1919,

when the new partnership was being formed, Mr. Gallivan knew of this charge which had been made by Mr. O'Donnell and made no objection to it, and that in June, 1920, when the matter was again mentioned, Mr. Gallivan said it was "all right." The court found that while the withdrawals were not originally authorized by Mr. Gallivan they were ratified by him.

We are of the opinion that the evidence is sufficient to support the finding. The partnership books were subject to examination by Mr. Gallivan at any time and it is reasonable to assume that he saw the entries of the withdrawals by Mr. O'Donnell. Mr. O'Donnell gave clear and positive testimony that in June, 1920, when he told Mr. Gallivan of the withdrawals for salary, Mr. Gallivan replied that it was "all right." During the remaining twenty months of his life Mr. Gallivan made no demand upon Mr. O'Donnell for the return of any portion of this money.

Complainant argues that Mr. O'Donnell's testimony is self-serving and unconvincing. His testimony is not inherently improbable or unreasonable and stands unimpeached upon the record. The weight to be given to his testimony was for the trial justice who heard him testify. Mr. O'Donnell's testimony was accepted as true by the trial justice, and nothing appears in the record to warrant this court in saying that the trial justice erred in so doing.

Complainant further argues that the court erred when it refused to permit her to testify as to what her husband said to her, after the dissolution of the partnership, about his discovery on the books of the payment of a salary to Mr. O'Donnell. No exception was taken to this ruling and consequently it cannot be considered. Complainant also argues that the court erred in refusing to permit her to testify as to the contents of a letter written by Mr. Gallivan to a Mr. Mowry. The ruling was correct as it did not appear that Mr. Mowry was unavailable as a witness or that the original letter could not have been produced.

LIQUIDATING CHARGE. After the dissolution of the partnership respondents collected $83,631.55 of its accounts receivable. Mr. Gallivan was entitled to one-third of this amount and the respondents were entitled to the remainder. Respondents charged 7½% for collecting the accounts. The court reduced this charge to 5%. Complainant contends that the respondents are not entitled to any compensation. While courts have generally held that a liquidating partner is not entitled to any compensation for collecting the assets of the partnership—20 R. C. L. 979; 47 C. J. 1177—there is good authority to the contrary. In *Thayer* v. *Badger*, 171 Mass. 279, the court said there was a tendency to deal with this question upon its particular circumstances rather than by an absolute rule. See also *Hoag* v. *Alderman*, 184 Mass. 217. The Uniform Partnership Act which has been adopted in eighteen states (but not in this State) provides that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs. 7 U. L. A. §18 (f).

We are of the opinion that a liquidating partner should be allowed compensation for his services if the circumstances warrant it. In this case it appears that within a few days after the partnership was dissolved (September 30, 1920) Mr. Gallivan and the O'Donnells each organized an insurance agency and began active solicitation for business. On October 12 the postmaster of Providence, in compliance with notice from Mr. Gallivan, refused to deliver any mail addressed to the firm of Gallivan & O'Donnell to the O'Donnells. They attempted to have this order rescinded but could not do so because Mr. Gallivan would not withdraw his objection. Complainant did not withdraw the objection until January 23, 1926. During all this time no mail addressed to the firm was delivered to the O'Donnells and they were put to great inconvenience and expense in collecting the many debts due the firm and were greatly embarrassed and hindered in liquidating its affairs. The evidence justifies awarding compensation to the respondents.

INTEREST ON PREMIUMS. After the dissolution of the firm, respondents collected $2,650.43 for additional premiums on Workmen's Liability Insurance written by the firm prior to its dissolution. Respondents claimed these premiums because they were appointed agents of the insurance companies soon after the dissolution of the old firm, and therefore they did not include this amount in the audit as partnership assets. The court held that, inasmuch as the insurance had been written prior to the dissolution of the old firm, the premiums received on subsequent adjustments were partnership assets. Complainant contends that the court should have ordered respondents to pay interest on this sum. Respondents opposed this contention on the grounds that they ought to be paid for collecting the premiums and should be reimbursed for some losses paid to the insured. In the circumstances it does not appear that the court erred by not allowing the claim for interest. 47 C. J. 1255.

AUTOMOBILE. April 23, 1920, respondents without Mr. Gallivan's knowledge purchased for the firm an automobile with partnership funds. September 11 Mr. Gallivan learned of the purchase and made no objection thereto. September 30 respondents sold the automobile. Complainant claimed the respondents should be charged $850, the difference between the purchase price and the selling price. The court found that the use of an automobile was necessary and beneficial in the partnership business and held that the respondents should not be charged for the amount of its depreciation. We find no error in this ruling. It does not appear that the respondents sold the automobile for less than its market value.

BAD DEBTS CHARGED OFF. When the new partnership was created April 1, 1919, it had no capital except what it received from the first partnership. This capital was shown on the books of the new partnership by the entry of a credit of $25,835.23 to each of the two original partners. A large part of this capital consisted of bills receivable.

Afterwards it developed that $5,239.38 of these bills receivable were uncollectible and one half of this amount was charged against the credit balance of each partner. Complainant contended that the amount should be charged against the earnings of the new partnership. The trial justice overruled this contention because the articles of the new partnership provided that no credit given by the old firm should be charged against the earnings of the new firm. This ruling was correct and in accord with the agreement of the parties.

INTEREST. The court refused to charge respondent Thomas E. O'Donnell with interest on $15,000 withdrawn by him in excess of the amount withdrawn by Mr. Gallivan. It appears that on February 19, 1924, respondents deposited in the registry of the court $17,200, and on March 20, 1924, complainant was authorized to withdraw $13,382.94 of this amount and did so. The court found that the delay in winding up the partnership affairs could not be fairly attributed to the respondents and that, in view of the facts, it would be inequitable to charge the respondents with interest.

Complainant's objections to the findings of the trial justice as to the accounts receivable of the old partnership, as to the receipts and disbursements and the costs of the proceedings, will be considered together.

Complainant evidently believed that the two audits produced by the respondents did not account for a large amount of the partnership income. She called as a witness a Massachusetts accountant. He testified that it was his opinion that cash income between $60,000 and $70,000 was unaccounted for in the audits. To rebut this testimony the accountants who had made the audits for the respondents made a statement called a "cash reconciliation." The preparation of this statement required an exhaustive examination of the partnership books. This "reconciliation" of the cash receipts with the cash to be accounted for from the "receivables" showed that, of a total cash to be accounted

for of $1,107,181.30, there was a net unaccounted-for variation of $360.07; that, of the cash disbursements to be paid out on "payables, expenses, etc." of $1,094,677.51, there was a net unaccounted-for variation of $573.48. Complainant's local accountant testified that he did not find the audits offered by respondents incorrect to any extent. Much of the misunderstanding as to the correctness of the audits arose from the fact that the partnership books were kept on the cash or single-entry system and that the audits were made on an accrual or double-entry basis; that the lengthy cross-examination of respondents' accountant was caused, in part, in an attempt to reconcile the audits with the books before the "cash reconciliation" had been made.

After considering the testimony the trial justice said that. the respondents acted in good faith throughout, carried on their duties in a diligent manner under the circumstances, made no concealment of the assets or books; that the books were open to the complainant for inspection or audit and that there was nothing on the facts to take the case out of the general rule that the partnership funds must bear the expense of the audit and liquidation. We have examined the evidence and find no error in this conclusion. The general rule is that the costs of a partnership accounting are paid out of firm assets; these costs include fees for expert accountants. 2 Rowley, Modern Law of Partnership, p. 1016.

After a hearing December 3, 1932, final decree was entered. Complainant made a motion that respondents be directed to deliver to her a list of the bills receivable charged against the old partnership, amounting to $14,265.18, and also a list of its uncollected notes and accounts amounting to $12,717.16. The motion was denied. It is unnecessary to consider the validity of this ruling at the present time because it is not included in the final decree. Respondents state in their brief that complainant may examine the partnership books at any time and obtain the desired

information. If permission to make such examination is refused, she may bring appropriate proceedings to obtain such an examination.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*John F. Beagan,* for complainant.

*Comstock & Canning, Edward M. Brennan,* for respondents.